UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JIMMY DALE TOWNSEND, and )<br>DEBORAH LYNN TOWNSEND, )<br>)<br>Defendants. ) | No. 4:11CR428 CEJ<br>(FRB) |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

1. Defendants' Joint Motion To Suppress Evidence
   (Docket No. 41)

Testimony and evidence was adduced on the defendants' motion at a hearing before the undersigned on January 18, 2012, and at a supplemental hearing on May 29, 2012. From the testimony and evidence adduced at those hearings the undersigned makes the following findings of fact and conclusions of law:

Findings Of Fact

In April 2011 Detective Jason Grellner, of the Franklin County, Missouri Sheriff's Department received information from a citizen tipster. The citizen telephoned the Franklin County Sheriff's Office and spoke with Detective Grellner. The citizen

reported that they were able to see onto the Townsend property from their own property nearby. The citizen reported that a trailer had been placed on property owned by Jimmy and Deborah Townsend in Labadie, Missouri. The citizen reported that the trailer had appeared on the Townsend property shortly after law enforcement officers conducted a search of the property of Larry Ortmann. The citizen reported that the trailer had originally been parked at the side of the Townsend residence but had then been moved to the back of the property. The citizen reported that they had seen people coming and going from the trailer late at night and that the citizen thought that methamphetamine was being manufactured at the trailer.

Detective Grellner was familiar with Jimmy Dale Townsend from a previous methamphetamine investigation relating to James Thomas and from an ongoing methamphetamine investigation relating to Larry Ortmann. Prior to the citizen telephone call Detective Grellner knew from a review of records that within the recent past Jimmy Townsend had purchased a large amount of pseudoephedrine pills. Pseudoephedrine is an ingredient used in the manufacture of methamphetamine. After the citizen call Detective Grellner also learned that Deborah Townsend had also made numerous purchases of pseudoephedrine pills in the recent past.

Based on all of this information Detective Grellner determined to visit the Townsend residence at 116 Glenn Oaks Drive, Labadie, Missouri, and to discuss these matters with the residents. Detective Grellner and other officers of the Franklin County Sheriff's Office went to the residence on April 7, 2011. Detective Grellner knocked on the front door. The door was answered by Deborah Townsend. Detective Grellner explained the purpose of their visit and asked to speak to Jimmy Townsend. Deborah Townsend called to Jimmy Townsend and he eventually came to the door. Detective Grellner then told Jimmy Townsend of the purpose of the visit. He specifically asked Jimmy Townsend about the trailer located on the property. Jimmy Townsend told Detective Grellner that Larry Ortmann had brought the trailer to the property and that he, Jimmy Townsend, had taken the trailer in exchange for work that he, Jimmy Townsend, had done for Ortmann.

Detective Grellner then asked Jimmy Townsend for permission to search the trailer. Townsend initially was hesitant to consent to a search of the trailer but after some discussion did agree to a search of the trailer. Townsend said that he wanted only he and Detective Grellner to go to the trailer for the search. Detective Grellner explained to Townsend that for reasons of officer safety that was not acceptable to the officers. Townsend then acquiesced and Townsend, Detective Grellner and several other officers then went to the trailer. Once inside the trailer

Detective Grellner saw what appeared to be an office area with a desk, filing cabinets and a bulletin board.  Inside the desk the officers found "burnt foilies" with a residue.  The foilies were known to the officers as items related to the use of methamphetamine.  Pinned to the bulletin board they found a receipt for the purchase of batteries in February, 2011.  The officers knew that lithium batteries were commonly used in the manufacture of methamphetamine.  After finding these items the officers, along with Jimmy Townsend, returned to the residence area.

After the officers and Jimmy Townsend returned to the residence, one of the officers, Detective Scott Briggs, spoke with Deborah Townsend.  Detective Briggs asked Deborah Townsend for consent to search the residence and she agreed.  Jimmy Townsend was also asked and gave permission to search the residence.  After Deborah Townsend and Jimmy Townsend gave verbal consent to search the residence, another of the officers, Detective Gillam began searching in the kitchen area of the residence where she found aluminum foil with a burnt residue on it.  In the meanwhile, Detective Grellner instructed Detective Briggs to have the Townsends' consent to search reduced to writing.  Detective Briggs then presented a printed "Permission To Search" form to Deborah Townsend.  The form granted the officers permission to search the residence at 116 Glenn Oaks Drive, Labadie, Missouri, and noted that the consent was given freely and voluntarily, without threats

or promises, and with the understanding that Townsend did not have to allow the search. After reading the form Deborah Townsend signed the form. (See Government's Exhibit 8). After Deborah Townsend signed the form Detective Briggs then asked Jimmy Townsend to similarly sign a permission to search form. Jimmy Townsend refused to sign the form. The officers who had begun to search the residence then stopped searching.

Detective Grellner then instructed Detective Briggs to apply for a warrant to search the residence. Detective Briggs then did so. He prepared and signed an application to search the residence at 116 Glenn Oaks Drive, Labadie, Missouri. He also prepared an affidavit in support of the application. The affidavit set out the following information:

> 1. On April 7th 2011, the Franklin County Narcotics Enforcement Unit hereafter referred to as FCNEU, went to the described residence located at 116 Glen Oaks Dr. Labadie Missouri. Sgt. Jason Grellner had information from a concerned citizen living in the area who reported Jimmy Dale Townsend was possible (sic) involved in the manufacturing of methamphetamine at his residence.
>
> 2. The concerned citizen reported that Jimmy Dale Townsend had moved a trailer behind the residence and was possible (sic) manufacturing methamphetamine inside.
>
> 3. Det. Darryl Balleydier of this unit checked the State wide data base for pseudoephedrine purchases and discovered Jimmy Dale Townsend had made eleven purchase of pseudoephedrine between August 2010 and April 2011. The most recent being on April 6th 2011. Also his wife Deborah Townsend made 11 purchases between June 2010 and February 2011.

4. The decision was made to respond to the residence and speak to Jimmy and Deborah Townsend. Upon arrival we knocked on the door which was answered by Deborah Townsend. We asked to speak with Jimmy Townsend and we explained to them why we were there.

5. Sgt. Grellner received permission from Jimmy Townsend to search the red and white trailer behind the residence. While searching the trailer several pieces of aluminum foil with burnt residue were located. Based on my training and experience I know aluminum foil is used to smoke methamphetamine. Also found was a receipt from February 2011 from Wal-Mart for the purchase of lithium batteries which I know are used in the manufacturing of methamphetamine.

6. I obtained verbal permission to search the residence from both Jimmy and Deborah Townsend. Det. Gillam was searching the kitchen area of the residence and located aluminum foil with burnt residue. While I was attempting to obtain written permission for the search Jimmy Townsend withdrew his verbal consent.

9.[1] The residence was secured and Detectives remained at the residence while I responded to the Prosecutor's Office to apply for a search warrant.

The application and affidavit were submitted to a judge of the Circuit Court of Franklin County, Missouri, who then found that based on the information set out in the application and affidavit probable cause existed that methamphetamine, and related paraphernalia could be found at the residence and in the buildings and vehicles located on the property and issued a warrant to search those areas. (See Government's Exhibit 7 - Application, Affidavit and Search Warrant).

---

[1]The paragraphs are so numbered in the affidavit. There are no paragraphs numbered 7 or 8.

The officers then executed the warrant and seized numerous items of evidence. (See Government's Exhibit 9 - Inventory of items seized).

At the hearing on the defendants' Motion To Suppress Evidence the court heard the testimony of Detectives Grellner and Briggs, as well as the testimony of defendant Jimmy Townsend. Also testifying was Stephanie Townsend-Miller, the daughter of Jimmy and Deborah Townsend, who was called to the scene by her mother and who witnessed some of the occurrences at the residence on the day in question. The testimony of Jimmy Townsend and Stephanie Townsend-Miller agreed in some respects with the testimony of Detectives Grellner and Briggs on some matters and disagreed in others. To the extent that it is necessary to resolve these discrepancies in order to determine the issues raised in the defendants' motion, having had the opportunity to see and hear the testimony of the witnesses, to observe their demeanor, and to consider matters reflecting on their credibility, the undersigned does choose to credit the testimony of Detectives Grellner and Briggs.

Evidence was adduced that on April 7, 2011, during their investigation at the Townsend residence the officers were accompanied by a newspaper photographer from the St. Louis Post Dispatch Newspaper. The defendants served subpoenas on the St. Louis Post Dispatch, the newspaper photographer and a reporter who wrote a related story published in the Post Dispatch Newspaper to

appear and give testimony at the hearing on defendants' Motion To Suppress. On December 14, 2011, the Post Dispatch, the reporter and the photographer filed a Motion To Quash the subpoena, invoking the "reporters privilege". The defendants later withdrew the subpoena to the reporter. The undersigned held hearings on the Motion To Quash on January 6, 2012, and May 3, 2012. At the close of the hearing on May 3, 2012, the court stated on the record that it would grant the motion to quash based on the "reporters privilege". On May 8, 2012, the government notified the court that it learned that the newspaper photographer had provided copies of the photos that he took of the events of April 7, 2011, to Detective Grellner and Detective Grellner had those photographs in his possession. The government obtained copies of the photos from Detective Grellner and provided them to the defendants. On May 9, 2012, the Post Dispatch and the photographer notified the court that they were withdrawing their motion to quash insofar as it sought to prohibit production by the newspaper and the photographer of the photos taken on April 7, 2011. The defendants used the photos to examine Detective Grellner at the supplemental motion hearing on May 29, 2012.

## Discussion

As grounds to suppress the evidence seized by law enforcement officers the defendants contend that the evidence was seized without their consent and that the search warrant that was

obtained was not supported by probable cause.

Persons may give up their Fourth Amendment rights by voluntarily consenting to a search. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000). In determining whether a consent to search was voluntary the court must examine the totality of the circumstances in which it was given. Schneckloth v. Bustamonte, supra at 226. In United States v. Chaidez, 906 F.2d 377 (8th Cir. 1990) the Eighth Circuit Court of Appeals set out factors to be considered in determining whether consent to search was voluntarily given. Characteristics of persons giving consent which may be relevant to the question include: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system. Id. at 381. Characteristics of the environment in which consent was given include: whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either

objected to the search or stood by silently while the search occurred. Id. The factors should not be applied mechanically, id. No single factor is dispositive or controlling. United States v. Bradley, supra, at 366 (Citing United States v. Ponce, 8F.3d 989, 997 (5th Cir. 1993)).

The initial search of the trailer on the Townsend property in which the officers found and seized a "burnt foilie" with residue and a receipt for batteries was lawful because conducted pursuant to the voluntary consent to search given by Jimmy Townsend. At the time of the search Jimmy Townsend was a mature individual. At the time of his arraignment on October 31, 2011, the defendant told the court that he was 53 years of age, had an 11th grade education and was able to read and write. There is no evidence that Jimmy Townsend was under the influence of drugs or alcohol at the time consent to search was given. At the time consent was given Jimmy Townsend was not under arrest or otherwise detained, he was free to move about and did move about his property. There is no credible evidence that the defendant was threatened or physically intimidated by the officers or that any threats or promises were made to him to induce him to consent to the search.

For these same reasons the initial brief search of the kitchen area of the Townsend residence was lawful because conducted with the verbal consent of both Jimmy and Deborah Townsend. At the

time consent was given by Deborah Townsend she was a mature individual. At her arraignment on October 31, 2011, she told the court that she was 52 years of age, had some college education and was able to read and write. There is no evidence that Deborah Townsend was under the influence of drugs or alcohol at the time consent to search was given. At the time Deborah Townsend and Jimmy Townsend gave verbal consent to search the residence they were not under arrest or otherwise detained. There is no credible evidence that either Jimmy or Deborah Townsend were threatened or physically intimidated by the officers or that any threats or promises were made to them to induce their consent to search the residence. When Jimmy Townsend thereafter declined to reduce his consent to written form the officers ceased their search and sought a warrant.

Search warrants to be valid must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause, . . . as the very name implies, we deal with

probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding. Gates, 462 U.S. at 236.

The information set out in the warrant application and accompanying affidavit, when viewed in its totality provided probable cause for the issuance of the search warrant.

Even if the warrant were found not to be supported by adequate probable cause, the officers reasonably relied on the finding by a judge of the Circuit Court of Franklin County that the warrant was supported by adequate probable cause. <u>United States v. Leon</u>, 468 U.S. 897 (1984); <u>United States v. Carpenter</u>, 341 F.3d 666 (8th Cir. 2003), and for that reason their search conducted pursuant to the warrant was lawful.

<u>Conclusion</u>

For all of the foregoing reasons the defendants' Motion To Suppress Evidence should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendants' Joint Motion To Suppress Evidence (Docket No. 41) be denied.

The parties are advised that any written objections to these findings and determinations shall be filed not later than **Friday, July 20, 2012**. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of July, 2012.